JOHN T. MAGOWAN, ET AL., *v.* GEORGE T. FRY, ET AL.

**Conveyance of Real Estate.**

Where a deed conveys a fee simple title subject only to be divested should the grantee die without issue, and providing that in that event the property should go to his brothers and sisters, such condition does not reduce the estate to a mere life estate with remainder over, but such grantee takes a fee simple subject only to be defeated if he dies without issue, and if he conveys such real estate his grantee takes a fee simple subject to the same conditions.

**Who Maintain an Action.**

Where a conveyance is made on condition that, if the grantee dies without issue, alive at his death, the property should go to his brothers and sisters, and he sells and conveys such real estate during his life time, the brothers and sisters have no interest in such real estate and can maintain no action for any part of the purchase money thereof.

APPEAL FROM CLARK CIRCUIT COURT.

January 29, 1877.

OPINION BY JUDGE COFER:

William Scott did not, by his conveyance of August 20, 1870, convey any land to his son, Daniel Scott. He recites the fact that he had advanced 46 acres, 1 rood and 34 poles of land to Daniel, which Daniel had sold to Joseph Scott, and he conveyed the same to Joseph at the request of Daniel.

In the concluding paragraph of his deed, William Scott makes this condition and restriction: "That if any one of them dies without issue or heirs of their bodies, then their portion of land herein conveyed to them is to go to their remaining brothers and sisters, then living, or the bodily heirs of those who may be dead shall have the same portion that their father or mother would have had if alive, and if any of the parties to whom I have made this deed shall sell his or her portion, they shall lay the same out in land subject to the same conditions as are attached to the land herein conveyed to them, and the purchaser who purchases any of the same contained in this deed will be required to see the conditions put on this land herein conveyed carried out, and that the money he pays for any of the land herein is laid out in land subject to the conditions as I put on the land conveyed to any children in this deed."

As William Scott conveyed no land to Daniel Scott, he is not embraced by the conditions of the deed, and he held the money or other

property he received from his brother, Joseph, unembarrassed by the limitations his father annexed to or engrafted upon the estates of his brothers and sisters in the lands conveyed to them.

He no doubt believed that his estate in this money or property was limited by the conditions of the deed, and when he purchased from Kate Hieronymus he permitted her to annex the following condition to 48 acres, 3 roods and 6¼ poles of the land she conveyed to him:

"In the event Daniel Scott dies without leaving issue or heirs of his body said 48 acres," etc., "shall go to his brothers and sisters then living, and the heirs of any that may be dead, the children of those who may be dead to have the same portion that their father or mother would if alive." This condition does not reduce the estate of Daniel Scott to a mere life estate, with remainder over, first to his own issue, and in default thereof, then to his brothers and sisters and their issue. He takes an estate in fee simple, subject to be defeated if he shall die without issue living at the time of his death. The remainder to his brothers and sisters is purely and strictly a contingent estate.

Daniel Scott sold the tract of land to George T. Fry, and at his request conveyed it to his wife, Ann E. Fry. One of Fry's notes for a portion of the purchase price, amounting to $3,927.53, Daniel Scott sold and assigned to the appellants, MaGowan and Amis. The consideration for the sale and assignment of said note was a tract of land lying in Lee county, Kentucky, and certain personal property. The conveyance of this realty contained a similar limitation to that contained in the deed of Hieronymus.

MaGowan and Amis sued Fry. He defended upon the ground that the title to the land conveyed to his wife was defective. He made his answer a cross-petition against the brothers and sisters of Daniel Scott. They answered and denied that the investment in the Lee county land and the personal property sold by appellants to Daniel Scott, was not a proper investment of the fund raised by the sale of the 48 acres in which they held a contingent interest, and asked to have their rights protected.

The chancellor adjudged that Fry should pay the full amount of the note, and directed an enforcement of the lien retained in the deed to his wife. He also held that the appellants were entitled to no portion of the proceeds of the sale of said 48 acres, and directed his master to collect and hold the same until he might make a proper

and judicious investment. From this judgment MaGowan and Amis appeal.

We will not stop to inquire whether the pleadings of the brothers and sisters of Daniel Scott are sufficient to entitle them to relief against the appellants. It seems to this court they have no interest whatever in the matter in controversy. Their contingent right to take as remaindermen the 48 acres of land sold to Fry and wife cannot be defeated by the act of Daniel Scott in selling and conveying the same, and if Fry and wife can be compelled to pay the money and retain the title conveyed to them (which is the fee in the land, subject only to be defeated by the death of their vendor without living issue) we do not see why the chancellor should undertake to control the purchase price when paid. Daniel Scott's assignees are clearly entitled to their money.

So much of the judgment as denies to appellants, MaGowan and Amis, any portion of the proceeds of the note sued on, is *reversed* and the cause remanded for judgment conforming to this opinion.

*Peters & Brock, for appellant.*

*C. S. French, Beckner & Nelson, for appellees.*

